# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

WELLS FARGO ADVISORS, L.L.C.,        :
                                                :

                             Petitioner,    :

                                                :

             -against-             :            15-CV-7722 (VEC)

                                                :

REAGAN TUCKER, BENJAMIN DOOLEY,    :

MARVIN GLASGOLD,              :         OPINION & ORDER

                                                :

                       Respondents. :

------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

        Respondents Reagan Tucker ("Tucker"), Benjamin Dooley ("Dooley") and Marvin

Glasgold ("Glasgold") (collectively the "Respondents") commenced an arbitration proceeding

before the American Arbitration Association ("AAA") against their former employer, Wells

Fargo Advisors, L.L.C. ("Wells Fargo"), raising class-wide and collective claims for unpaid

overtime.  In response, pursuant to the Federal Arbitration Act, 9 U.S.C.A. § 1 *et seq.* ("FAA"),

Wells Fargo filed a Petition to Dismiss or in the Alternative Stay the Pending Arbitration and

Compel Individual Arbitration in Accordance With the Binding Arbitration Agreements

("Petition").  For the following reasons, Wells Fargo's Petition is DENIED.

## BACKGROUND

**I.    Respondents' Arbitration Action**

        Respondents are former Wells Fargo financial advisors who were employed at Wells

Fargo branch offices in New York and Texas between July 2011 and August 2013.  Petition ¶¶

10-12.  In connection with their employment, each Respondent signed a "New Financial Advisor

Training Agreement" (the "Agreement"), pursuant to which each agreed to arbitrate "any

controversy or dispute" with Wells Fargo.  *See* Declaration of Kenneth J. Turnbull in Support of

Petition ("Turnbull Decl."), Exs. A-C.

> Paragraph 14 of the Agreement provides in pertinent part:
>
>> you agree that any controversy or dispute, including but not limited to, claims
>> of wrongful termination, breach of contract, discrimination, harassment,
>> retaliation, infliction of emotional distress, tortious interference with business or
>> contract, federal, state or local statute or ordinance and/or other theory, arising
>> between you and Wells Fargo Advisors, shall be submitted for arbitration before
>> FINRA.  If the FINRA does not accept the controversy, dispute or claim, or any
>> portion thereof, then the nonaccepted controversy, dispute or claim shall be
>> submitted for arbitration before the American Arbitration Association pursuant
>> to its Securities Arbitration Rules, effective May 1, 1993.

On July 23, 2015, Respondents initiated identical putative class actions with the Financial

Industry Regulatory Authority ("FINRA") and the AAA, asserting, *inter alia*, claims for unpaid

overtime under the Fair Labor Standards Act ("FLSA") and the New York Labor Law

("NYLL").  *See* Turnbull Decl., Exs. D, E.  In their statement of claim before the AAA,

Respondents allege that Wells Fargo misclassified them as exempt employees under the FLSA

and NYLL and failed to pay them overtime for hours worked in excess of 40 hours per week.

Trumbull Decl., Ex. E ¶¶ 3-4.  Respondents seek to arbitrate their claims on a class-wide basis

representing, first, a class of similarly-situated financial adviser "Trainees," *id.* ¶ 1-2, and

second, a class of similarly-situated "Apprentice Phase" financial advisers, *id.*

> Because Rule 13204 of the FINRA Code of Arbitration Procedure for Industry Disputes

prohibits class action claims from being arbitrated by FINRA, *see* Memorandum in Support of

the Petition to Dismiss or in the Alternative Stay the Pending Arbitration and Compel Individual

Arbitration in Accordance With the Binding Arbitration Agreements ("Mem.") at 4; *see also*

*Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 178 (2d Cir. 2015), Respondents' claims are now

pending arbitration before the AAA.

## DISCUSSION

### I.     Legal Standard

The Federal Arbitration Act "is an expression of a 'strong federal policy favoring

arbitration as an alternative means of dispute resolution.'" *Ross v. Am. Express Co.*, 547 F.3d

137, 142 (2d Cir. 2008) (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am.*

*Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)).  As a result "any doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), and courts should "construe arbitration clauses

as broadly as possible," *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 250

(2d Cir.), *cert. dismissed*, 501 U.S. 1267 (1991) (citation omitted).  "Of course, notwithstanding

the policy favoring arbitration, 'arbitration is a matter of contract and a party cannot be required

to submit to arbitration any dispute which he has not agreed so to submit.'" *Klein v. ATP Flight*

*Sch., LLP*, No. 14-CV-1522(JFB)(GRB), 2014 WL 3013294, at *4 (E.D.N.Y. July 3, 2014)

(quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)); *see also*

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) (Congress

enacted the FAA "to make arbitration agreements as enforceable as other contracts, *but not more*

*so*." (quoting *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003)

(emphasis in original)).

"[D]isputes about 'arbitrability'. . . . such as 'whether the parties are bound by a given

arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a

particular type of controversy'" are presumptively "gateway" issues for the court to decide.  *BG*

*Grp., PLC v. Republic of Argentina*, 134 S.Ct. 1198, 1206 (2014) (quoting *Howsam v. Dean*

*Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  The Supreme Court has clarified, however, that

such "gateway" questions arise only in:

narrow circumstance where contracting parties would likely have expected a court to
have decided the gateway matter, where they are not likely to have thought that they had
agreed that an arbitrator would do so, and, consequently, where reference of the gateway
dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may
well not have agreed to arbitrate.

*Howsam*, 537 U.S. at 83-84.  Furthermore, the "presumption [that gateway questions will be

decided by courts] may be overcome if the parties have 'clearly and unmistakably' delegated to

an arbitrat[or] the authority to resolve issues of arbitrability."  *Klein*, 2014 WL 3013294, at *4

(quoting *Howsam*, 537 U.S. at 83).

As to the scope of an arbitration agreement, the court's determination generally "depends

on whether the agreement is a broad agreement or a narrow one."  *Edwards v. Macy's Inc.*, No.

14CV-8616(CM)(JLC), 2015 WL 4104718, at *10 (S.D.N.Y. June 30, 2015) (citing *Mehler v.*

*Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000)).  "If the agreement is broad—that is, if it calls

for arbitration of 'any and all disputes'—there arises a presumption of arbitrability; and if the

claim 'implicates issues of contract construction or the parties' rights and obligations under it,'

the issue of contract construction is perforce arbitrable."  *Edwards*, 2015 WL 4104718, at *10

(quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)).

Here, the parties do not dispute that the arbitration clause included in Respondents'

Agreements is valid and binding.  Nor do the parties dispute that Respondents' underlying FLSA

and NYLL claims fall squarely within the scope of the arbitration clause.  The parties' dispute

focuses instead upon: (1) whether, under the terms of the applicable arbitration clause,

Respondents are entitled to (or precluded from) arbitrating on a collective or class-wide basis,

and, (2) who, as between the Court and the arbitrator, must make that determination in the first

instance.

I.      **The Arbitrator Should Determine Whether Respondents May Proceed on a Collective or Class-wide Basis**

While the Supreme Court and Second Circuit have yet to issue binding precedent, the weight of authority among district courts in this Circuit is that the arbitrator, rather than the Court, should decide questions regarding the availability of class arbitration.  *See, e.g.*, *Rossi v. SCI Funeral Servs. of New York, Inc.*, No. 15CV473(ERK)(VMS), 2016 WL 524253, at *8 (E.D.N.Y. Jan. 28, 2016) ("District courts in this circuit presented with this question have generally found that the issue of classwide arbitration is for an arbitrator to decide." (citing cases)); *see also Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 615 (E.D.N.Y. 2011). Although at least one court in this District has taken the opposite position, *see Anwar v. Fairfield Greenwich, Ltd.,* 950 F.Supp.2d 633, 639 (S.D.N.Y. 2013), the Court finds that, based on its review of the relevant precedent and for the reasons articulated by the majority of sister courts to have addressed the issue in this Circuit, the arbitrator must decide the availability of class-wide arbitration in this case.

In *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452-53 (2003), the Supreme Court concluded, in a four-Justice plurality opinion, that it was for the arbitrator to decide, in the first instance, whether a broad arbitration clause encompassing "[a]ll disputes" contemplated class arbitration when the clause was silent with respect to the availability of class procedures. In distinguishing the availability of class arbitration from "gateway" issues that must be decided by district courts, the plurality noted that, with respect to class arbitrability:

> [T]he relevant question here is what kind of arbitration proceeding the parties agreed to. . . . Arbitrators are well situated to answer that question.  Given these considerations, along with the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts, to decide.

*Id.* (emphasis omitted).  Justice Stevens did not join the plurality opinion, but commented in a separate opinion that "[a]rguably the interpretation of the parties agreement should have been made in the first instance by the arbitrator, rather than the court."  *Id.* at 455 (Stevens, J. concurring in the judgment and dissenting in part).

The plurality opinion in *Bazzle* has since been qualified, but not rejected, by the Supreme Court in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), and *Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064 (2013).  In *Stolt-Nielsen*, the Supreme Court held that the arbitrators exceeded their authority by requiring an unwilling party to participate in class-wide arbitration when the applicable arbitration clause was silent on the issue.  559 U.S. at 676-77.  In so holding, the Court opined that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so," *id.* at 684 (emphasis in original), in part because class arbitration fundamentally changes the nature of arbitration, *id.* at 685.  The *Stolt-Nielsen* Court pointed out that "only [a] plurality" in *Bazzle* had held that the question of class arbitration was for the arbitrator to decide.  *Id.* at 680.  The Court did not, however, revisit the issue of who, as between the court and the arbitrator, should determine the availability of class arbitration in the first instance, "because the parties' supplemental agreement expressly assigned this issue to the arbitration panel . . . ."  *Id.*

In *AT&T Mobility LLC*, the Supreme Court invalidated, as preempted by the FAA, a California Supreme Court decision that "classif[ied] most collective-arbitration waivers in consumer contracts as unconscionable."  563 U.S. at 340, 352.  In so holding, the Court noted that "[a]rbitration is poorly suited to the higher stakes of class litigation," *id.* at 350, finding it "unlikely" that, in passing the FAA, Congress intended to entrust arbitrators "with ensuring that third parties' due process rights are satisfied" in connection with class litigation, *id.* at 349-50.

Finally, in *Oxford Health Plans LLC*, the Supreme Court affirmed an arbitrator's decision to permit class arbitration where the parties agreed to submit the issue to an arbitrator but noted that it "would face a different issue if [the petitioner] had argued below that the availability of class arbitration is a . . . 'question of arbitrability'" for the courts to decide.  133 S.Ct. at 2069 n.2, 2071.  Noting that the Supreme Court's decision in "*Stolt-Nielsen* [had] flagged that [class arbitration] might be a question of arbitrability," the Court nonetheless made clear that it "has not yet decided whether the availability of class arbitration is a question of arbitrability" for the court to resolve.  *Id.* at 2069 n.2.

In the wake of *Stolt-Nielsen*, *AT&T*, and *Oxford*, the Third, Fourth and Sixth Circuits[1] and at least one district court in this Circuit have held that class arbitration is a gateway issue that the court must decide.  *See Dell Webb Communities, Inc. v. Carlson*, 817 F.3d 867, 877 (4th Cir. 2016); *Opalinksi v. Robert Half Intern., Inc.*, 761 F.3d 326, 332 (3d Cir. 2014); *Huffman v. Hilltop Co., LLC*, 747 F.3d 391, 398-99 (6th Cir. 2014); *Anwar v. Fairfield Greenwich, Ltd.*, 950 F. Supp. 2d 633, 636 (S.D.N.Y. 2013).[2]  Meanwhile, the Fifth Circuit has affirmed its earlier holding in *Pedcor Mgmt Co., Inc. Welfare Benefit Plan v. Nations Pers. of Tex., Inc.*, 343 F.3d 355, 359 (5th Cir. 2003), reaffirming that a broad arbitration clause submitting "any dispute" to arbitration constitutes an unambiguous deferral of class arbitration determinations to the

---

[1]     The Ninth Circuit has also issued an unpublished opinion endorsing the same view.  *See Eshagh v. Terminix Int'l Co., L.P.*, 588 F. App'x 703, 704 (9th Cir. 2014) (affirming district court's order striking class allegations and compelling arbitration on the basis that the availability of class arbitration was a "gateway" issue for the court to decide).

[2]     Respondents attempt to distinguish *Anwar* by arguing that there, the court relied entirely on its authority to interpret its prior order compelling arbitration, and, as a result did not fully consider whether class arbitration is a "gateway" issue.  *See* Resp. Opp. at 4; *see also Anwar*, 950 F. Supp. 2d at 639 (The court "did not decide an independent procedural issue related to the arbitration, but rather [entered an order] pursuant to the Court's continuing jurisdiction 'to enforce and determine the contours of the May 18 Order compelling arbitration' in the first instance").  While the *Anwar* court did not cite *Bazzle*, it expressly considered the question of arbitrability, and found that the availability of class arbitration was a "gateway" issue for the court to decide.  *Anwar*, 950 F. Supp. 2d at 639.

arbitrator.  *See Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 197 (5th Cir. 2016).

In the absence of Supreme Court precedent expressly disavowing *Bazzle* and in keeping with

Second Circuit precedent regarding the arbitrator's role in interpreting the language of a broad

arbitration clause and the persuasive decisions of several sister district courts, the Court finds

that the availability of class arbitration under the arbitration provisions at issue should be decided

by the arbitrator, not by the Court.

     In particular, the Court finds the decisions in *In re A2P SMS Antitrust Litig.*, No. 12 CV

2656(AJN), 2014 WL 2445756, at *1 (S.D.N.Y. May 29, 2014) (procedural history omitted) and

*Edwards v. Macy's Inc.*, No. 14 Civ. 8616, 2015 WL 4104718, at *11-12 (S.D.N.Y. June 30,

2015) to be persuasive.  In *In re A2P SMS*, the defendants argued that the applicable arbitration

agreement was "silent" as to class-wide arbitration and, therefore, plaintiffs should be precluded

from pursuing class arbitration before the AAA.  2014 WL 2445756, at *1.  Judge Nathan

rejected that argument, holding "that the issue of the availability of class arbitration, like the

underlying merits, is for the arbitrator to decide."  *Id.*  In reaching her conclusion, Judge Nathan

undertook a careful and well-reasoned review of applicable precedent.  She found that "the issue

is a close one," given the tension between the plurality decision in *Bazzle* and the Supreme

Court's subsequent dicta highlighting the fundamental differences between bilateral and class-

wide arbitration.  *Id.* at *11-12.  Nevertheless, she found that "the question of the availability of

class arbitration does not go to the power of the arbitrators to hear the dispute, but rather to an

issue that simply pertains to the conduct of proceedings that are properly before the arbitrator,"

*id.* at *10; accordingly, whether the arbitration can proceed on a class basis is properly for the

arbitrator to decide, *id.*

     Similarly, in *Edwards*, Judge McMahon granted Defendants' motion to compel

arbitration but held that "it is clear that the issue of whether the [applicable arbitration language]

authorizes class-wide arbitration is for the arbitrators in the first instance, not for the court."
2015 WL 4104718, at *11.  Acknowledging *Stolt-Nielsen*'s prohibition against compelling a
non-consenting party to submit to class arbitration where the governing provision was "silent" on
the issue, the court noted that the arbitration clause in *Edwards* contained language referencing
the possible "consolidation" of disputes, which could be interpreted to provide for class-wide
arbitration.  *Id.* at *10.  With respect to the threshold question of "who decides," Judge
McMahon observed that, when the arbitration provision is broad, "there arises a presumption of
arbitrability; and if the claim 'implicates issues of contract construction or the parties' rights and
obligations under it,' the issue of contract construction is perforce arbitrable."  *Id.* (quoting
*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)); *see also*
*Edwards*, 2015 WL 4104718, at *10 ("Only if the agreement is a narrow one does the court
examine the possibility that contract construction might not be arbitrable." (citing *Louis Dreyfus*
*Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)).

Petitioner's attempt to distinguish those cases is unavailing.  With respect to *In re A2P*
*SMS*, Petitioner encourages the Court to reject Judge Nathan's holding based on her
acknowledgment that the availability of class arbitration is an issue that contracting parties could
conceivably expect a court to resolve.  Reply at 5 n.2 (quoting *In re A2P SMS*, 2014 WL
2445756, at *11).  But that acknowledgment only underscores the considered and measured
analysis by which Judge Nathan came to the opposite conclusion.  Similarly, the fact that Judge
Nathan certified for interlocutory appeal the question of "who decides" the availability of class
arbitration because there was "substantial ground for dispute," *In re A2P SMS Antitrust Litig.*,
No. 12-CV-2656(AJN), 2015 WL 876456, at *3 (S.D.N.Y. Mar. 2, 2015), does not persuade the
Court to reject her analysis, particularly given that Judge Nathan also denied defendants' motion

to stay her decision pending appeal, *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656, 2014 WL
4247744, at *5 (S.D.N.Y. Aug. 27, 2014).[3]

    With respect to *Edwards*, Petitioner argues that the court's holding was conditioned on its
finding that the applicable arbitration agreement was "not silent" on the issue of class arbitration
because it permitted multiple parties to "consolidate their claims."  Reply at 6 n.3 (citing
*Edwards*, 2015 WL 4104718 at *11).  While Judge McMahon agreed with the notion "that a
court can and should decide the issue of silence," *Edwards*, 2015 WL 4104718 at *12, she did so
in the context of finding that, before interpreting the arbitration clause, the court must grapple
with the predicate question of "who" should decide the question in the first instance.  *Id.*  On that
score, the *Edwards* decision makes clear that "when an arbitration clause is broad, issues of
contract construction are for arbitrators, not for the court."  *Id.* at *11 (citing *Collins*, 58 F.3d 16,
23).[4]  The Agreements at issue here, which require that "any controversy or dispute" be
submitted to arbitration, are undisputedly broad, and therefore the question of the availability of

---

[3]     The Court also notes that the interlocutory appeal in that case was subsequently withdrawn.  *See* Order, *In
re A2P SMS Antitrust Litig.*, No. 15-758, Dkt. 15 (2d. Cir. Apr. 3, 2015).

[4]     In addition, given that the concept of contractual "silence" arose in the peculiar circumstances present in
*Stolt-Nielsen*, where the parties had specifically agreed that the governing arbitration language did not address class
arbitration, *see Oxford*, 133 S.Ct. 2064, 2069 ("The parties in *Stolt–Nielsen* had entered into an unusual stipulation
that they had never reached an agreement on class arbitration." (citing *Stolt-Nielsen*, 559 U.S. at 668-69, 673)), the
Court is left to wonder what purpose can be served by requiring courts to make an initial determination regarding the
presence (or absence) of ambiguity in a broad arbitration clause when, at least in this Circuit, precedent suggests that
arbitrators are best-suited for that task.

     In any event, the Court need not decide whether courts "should decide the issue of silence" because here, as
in *Edwards*, "there is language that is capable of being construed in one of several ways on the issue."  *Edwards*,
2015 WL 4104718 at *12.  Petitioner argues that "[t]he inclusion of the AAA [as] an alternate forum in the
Agreements provides further evidence of the intent to individually arbitrate disputes, because it prevents parties
from avoiding arbitration by simply including the words 'class action' or 'collective action.'"  Reply at 9 n. 5.  The
alternate reading, of course, is that AAA was included as an alternate forum to permit parties to proceed as a class or
a collective even though, as Wells Fargo knows well, they otherwise would have been precluded from doing so
pursuant to FINRA Rule 13204.  As the Second Circuit has noted, "Rule 13204 does not prohibit the enforcement of
pre-dispute waivers of class and collective action procedures," *Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 180
(2d Cir. 2015).  Given the inclusion of the AAA as an alternate forum to FINRA and the absence of any
accompanying class waiver, an arbitrator could find the Agreement is "arguably not-silent" as to the availability of
class arbitration.  *Edwards*, 2015 WL 4104718 at *12; *see also Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 123 (2d
Cir. 2011) (arbitration agreements may implicitly agree to authorize class-action arbitration) (citations omitted).

class arbitration is a matter of contract construction for the arbitrator, not the Court, to decide.
*Edwards*, 2015 WL 4104718, at *10 (citation omitted).

Here, as in *Edwards*, the Court finds that this conclusion is reinforced by the fact that the governing AAA rules in operation at the time the Agreements were executed, and at the time arbitration was sought, grant the arbitrator authority to resolve all questions of contract interpretation, including gateway issues.  Although AAA's Securities Arbitration Rules, effective May 1, 1993 (the "1993 Rules"), do not expressly address who decides questions of class arbitration, Section 1 of the 1993 Rules states: "These rules and any amendment of them shall apply in the form obtaining at the time the demand for arbitration . . . is received by the AAA." Turnbull Decl., Ex. G at 8.  In 1999, the 1993 Rules were replaced by the Securities Arbitration Supplementary Procedures and the Commercial Arbitration Rules and Mediation Procedures, which provide that an arbitrator has the "power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  Resp. Opp. at 9 (citing AAA Commercial Arbitration Rules and Mediation Procedures).  Without deciding whether the incorporation of the 1993 Rules, and in turn the Supplementary Procedures and the Commercial Arbitration Rules, demonstrates that the parties "clearly and unmistakably" delegated the question of class arbitration to an arbitrator, *Howsam*, 537 U.S. at 83 (quotation omitted), this language nonetheless provides additional support for the Court's conclusion that the arbitrator, rather than the Court, should determine the availability of classwide arbitration in the first instance.[5]

---

[5]     While Petitioner argues that other authority from this Circuit militates in support of its position, its cited cases are inapposite because they do not reach the threshold question of "who decides" the question of class arbitration.  *See, e.g.*, *Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547, 554 (S.D.N.Y. 2011), *rev'd and remanded*, 726 F.3d 290 (2d Cir. 2013) (refusing to order defendant to submit to class arbitration after striking a class waiver as unenforceable); *Sanders v. Forex Capital Markets, LLC*, No. 11 CIV. 0864(CM), 2011 WL 5980202, at *6 (S.D.N.Y. Nov. 29, 2011) (finding that "the unavailability of class arbitration under the original agreement is not a ground for a finding of substantive unconscionability" where neither party argued that class

## II.      The Williams Action

Petitioner also argues that this case must be dismissed or stayed on "first-filed" grounds

based on the *Williams* Action.  *See* Mem. at 14.[6]  As a threshold issue, Petitioner cites to no case

in support of its position that the Court, rather than the arbitrator, should decide the first-filed

question as a gateway matter.  Even assuming, arguendo, that the Court has authority to decide

the question, dismissal of this action is not appropriate on first-filed grounds.  The first-filed rule

is a well-established Second Circuit doctrine, based on the principle that "where there are two

competing lawsuits, the first suit should have priority, absent the showing of balance of

convenience or special circumstances giving priority to the second."  *First City Nat'l Bank &*

*Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (alterations, citations, and internal

quotation marks omitted); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,

626 F.3d 699, 722 (2d Cir. 2010) ("Deference to the first filing embodies considerations of

judicial administration and conservation of resources and recognizes that a party who first brings

an issue into a court of competent jurisdiction should be free from the vexation of concurrent

---

arbitration was a question for the arbitrator to decide); *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 488 (2d Cir. 2013) (reversing district court's finding that arbitration clause unlawfully operated as a waiver of plaintiff's substantive right under Title VII in finding that plaintiff had no substantive entitlement to proceed via class action procedural mechanism under federal law).  Petitioner also relies heavily on Magistrate Judge Francis's opinion in *Chen-Oster v. Goldman, Sachs & Co.*, 785 F. Supp. 2d 394 (S.D.N.Y. 2011), *rev'd sub nom. on other grounds in Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483 (2d Cir. 2013), but, in that case, the parties agreed that the question of class arbitration should be decided by the district court rather than the arbitrator.  *Chen-Oster*, 785 F. Supp. 2d at 400.

[6]       Prior to this action being filed and prior to the Respondents initiating their arbitration proceedings, on March 20, 2014, former Wells Fargo employee Erika Williams filed a putative class and collective action complaint against Wells Fargo in the Northern District of Illinois (the "*Williams* Action").  *See* Mem. at 4 (citing Turnbull Decl. Ex. F. (the "*Williams* Compl.")).  Williams asserted claims under 42 U.S.C. § 1981, FLSA, Illinois labor law and state common law, *Williams* Compl. ¶ 1, challenging Wells Fargo's practice of recouping "training costs" from financial adviser trainees' wages if such trainees subsequently leave Wells Fargo or are terminated, *Williams* Compl. ¶¶ 7-8.  Williams further alleged that Wells Fargo discriminated against her and other African-American financial adviser trainees.  *Id.* ¶¶ 22-27.  She sought class certification of her claims under Illinois law and 42 U.S.C. § 1981, and collective or class certification of a sub-class of African American trainees who were forced to execute agreements requiring repayment of so-called "Training Costs" in the event of separation from the firm.  *Id.* ¶ 20.

litigation over the same subject matter.") (citations and internal quotation marks omitted).

Pursuant to this rule, "a district court has broad discretion to dismiss a lawsuit that is duplicative

of a prior action." *See Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (E.D.N.Y.

2013) (citation omitted).

      For the first-filed rule to apply, the two cases at issue must be substantially similar, but

they need not be identical. *See Castillo*, 960 F. Supp. 2d at 404 ("The lawsuits need not be

identical, but the claims and rights raised in the two actions must not differ substantially.")

(citing *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y.

2012)); *cf. Thomas v. Apple-Metro, Inc.,* No. 14-CV-4120 VEC, 2015 WL 505384, at *4

(S.D.N.Y. Feb. 5, 2015), *appeal withdrawn* (June 30, 2015) (applying the first-filed rule where

the lawsuits at issue "seek identical relief, assert nearly identical claims for minimum wage,

overtime and tipping violations under Federal law, and have been filed in a sister New York

district court with respect to the same class of plaintiffs as against the same core group of

Defendants").

      Here, apart from Respondents' claim for unpaid overtime wages as to the "Trainee" class,

the Court finds there to be little factual or legal overlap between the two suits.  Whereas the

*Williams* Action focuses on unlawful wage and labor practices resulting from Wells Fargo's

alleged practice of discriminating against African-American trainees and its alleged policy of

extracting "training costs" from former trainees' wages, Respondents raise overtime claims with

respect to two distinct classes: a Trainee class and an Apprentice class.  Even setting aside the

significant differences in the legal claims and proposed classes at issue in the two suits, it is clear

that the *Williams* Action will not resolve Respondents' claims to the extent Respondents seek

overtime wages owed to employees independently of any amounts due to the employer for

"training costs"; in addition, the *Williams* Action will not dispose of Respondents' overtime

claims with respect to the Apprentice class.  Because the two cases involve substantially

different claims, different classes, different facts, different evidence and different law, the Court

finds that the first-filed rule does not apply.  *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533,

539 (S.D.N.Y. 2013) (refusing to apply first-filed rule where suits did not involve essentially the

same issues and parties); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 136 (2d Cir. 2000) (Courts must

"not [ ] be swayed by a rough resemblance between the two suits without assuring itself that

beyond the resemblance already noted, the claims asserted in both suits are also the same.").

## CONCLUSION

For the foregoing reasons, Wells Fargo's Petition is DENIED, and the case shall proceed

to arbitration; the arbitrator shall determine the availability of class or collective arbitration in

accordance with the operative AAA rules.

Respondents have requested that the Court order Petitioner to show cause why this action

should not be dismissed.  Resp. Opp. at 15.  The Second Circuit has held that district courts lack

discretion to dismiss fully-referred arbitration cases when at least one party has requested a stay.

*See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("join[ing] those Circuits that

consider a stay of proceedings necessary after all claims have been referred to arbitration and a

stay requested"), *cert. denied*, 136 S. Ct. 596, 193 (2015); *see also id.* at 346 ("[A] mandatory

stay is consistent with the FAA's underlying policy 'to move the parties to an arbitrable dispute

out of court and into arbitration as quickly and easily as possible.'" (quoting *Moses H. Cone

Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983))).  Notwithstanding the fact that

this case is postured differently than *Katz* (in *Katz* the defendant in a civil action was seeking to

compel arbitration of a dispute that had been initiated in federal court, whereas here, both

Petitioner and Respondents agree that the underlying dispute must be arbitrated and the parties

presumably most interested in expediting arbitration (the Respondents) have requested

dismissal), out of an abundance of caution, if either party wishes for this case to be stayed

pending arbitration, the party must so inform the Court by letter not later than **July 22, 2016.**  If

neither party informs the court by that date that a stay is sought, this case will be dismissed.

**SO ORDERED.**

**Date:  July 1, 2016**
**         New York, New York**

**VALERIE CAPRONI**
**United States District Judge**