USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/2/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WELLS FARGO ADVISORS LLC,

                              Petitioner,

            -v-

REAGAN TUCKER, BENJAMIN DOOLEY, and
MARVIN GLASGOLD,

                              Respondents.

---

18 Civ. 6757 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Before the Court is a petition by Wells Fargo Advisors LLC ("Wells Fargo") to vacate an arbitrator's partial final clause construction arbitral award (the "Award"), which held that the parties to an arbitration agreement consented there to class-wide arbitration. Dkt. 1.

The Award arises out of a dispute in which three former Wells Fargo financial advisors—Reagan Tucker, Benjamin Dooley, and Marvin Glasgold (collectively "Respondents")—claim that Wells Fargo failed to pay them, and a putative class and collective, overtime pay required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), Art. 6, § 190 *et seq.*, Art. 9, § 650 *et seq.*[1] *See* Turnbull Decl. Ex. 4 ("Statement of Claim"). Each Respondent is party to a "New Financial Advisor Training Agreement" (the "Agreement") which, with limited exceptions, provides for the arbitration of disputes. *See* Turnbull Decl. Ex. 1 ("Agreement" or "Tucker Agreement").[2]

---

[1] Respondents also brought claims against Wells Fargo & Company, which is not a party to this lawsuit. *See* Dkt 7 ("Turnbull Decl.") Ex. 9 ("Award") at 11.

[2] The Court cites here to the Tucker Agreement as exemplary of the Agreement because the relevant portion of each of the three signed agreements, Paragraph 14, is identical.

Having failed in its chosen arbitral forum to limit the scope of the arbitral proceedings authorized by the Agreement to individual (non-class) proceedings, Wells Fargo now asks this Court to intervene. It asks, *inter alia*, that the Court vacate the arbitrator's construction of the Agreement and "[i]ssue an Order directing Respondents that they must arbitrate their claims" individually, on a non-class basis. Dkt. 1.

For the reasons that follow, the Court denies Wells Fargo's petition.

## I. Background[3]

### A. Factual Background and Procedural History

Respondents were all financial advisors working at Wells Fargo branch offices in either New York or Texas. *See* Dkt. 3 at 2 ("Pet'r Mem."); Dkt. 20 at 2 ("Resp't Mem."). In 2011 and 2013, Respondents and Wells Fargo entered into employment agreements. *See* Award at 1. Each Agreement contains an alternate dispute resolution provision that requires the parties to resolve any dispute, with certain exceptions, through arbitration. *See* Tucker Agreement ¶ 14. Each Agreement provides for mandatory arbitration before either the Financial Industry Regulatory Authority ("FINRA") or the American Arbitration Association ("AAA"), pursuant to its May 1, 1993 rules. *See id.*

Respondents claim that Wells Fargo, in violation of the FLSA and NYLL, failed to pay them for overtime work. *See* Award at 2. Respondents assert that Wells Fargo, per policy, did

---

[3] The Court draws these background facts principally from the Award, Dkt. 7 Ex. 9, the Tucker Agreement, and two decisions involving these arbitral proceedings: *Wells Fargo Advisors, L.L.C. v. Tucker*, 195 F. Supp. 3d 543 (S.D.N.Y. 2016), in which Judge Caproni held that the arbitrator must decide the question of whether the Agreement provides for class arbitration; and *Wells Fargo Advisors, L.L.C. v. Sappington*, 884 F.3d 392 (2d Cir. 2018) ("*Sappington I*"), which affirmed that decision. In the latter, the Second Circuit consolidated for purposes of appeal two separate actions brought against Wells Fargo—Tucker's, and an action brought by financial advisor Livia Sappington—because they raised the identical question of whether an arbitrator or a court was to decide if the Agreement provided for class arbitration.

not correctly tabulate the hours worked by employees like Respondents in its Financial Advisor Training Program, in that it "fail[ed] to use appropriate forms of wage statements for such employees" and "misclassif[ied] . . . employees in the 'Apprentice Phase' of the Program as [being] exempt from overtime requirements." *See id.*

Respondents sought to pursue their claims on a class-wide basis before FINRA. Award at 2; *see Tucker*, 195 F. Supp. 3d at 545. Rule 13204 of the FINRA Code of Arbitration Procedure for Industry Disputes, however, prohibits FINRA from presiding over class arbitration actions. For that reason, FINRA declined to hear this dispute. The arbitration, therefore, has proceeded before the AAA. *See* Award at 2; *see also Tucker*, 195 F. Supp. 3d at 546.

On September 30, 2015, Wells Fargo filed an action in this District seeking a stay of the arbitration to the extent brought on a class basis and an order compelling arbitration to proceed on an individual basis. In *Tucker*, Judge Caproni, to whom that action was assigned, denied Wells Fargo's application. She held that, under the Agreement, it was for the arbitrator, not a court, to decide whether the Agreement provided for class arbitration. *See Tucker*, 195 F. Supp. 3d at 553; Award at 2. Wells Fargo appealed that decision.

On March 7, 2018, the Second Circuit affirmed. It held that the Agreement "clearly and unmistakably expresses [the parties'] intent to let an arbitrator decide whether they agreed to authorize class arbitration." *Sappington I*, 884 F.3d at 394; Award at 4.

On June 28, 2018, the arbitrator assigned to the Tucker arbitration, Edith N. Dineen (the "Arbitrator"), issued a Partial Final Clause Construction Award, the decision at issue here. She construed the Agreement to allow Respondents "to pursue class claims in this arbitration." Award at 21.

On July 27, 2018, Wells Fargo filed a petition in this Court to vacate the Arbitrator's clause construction award insofar as it construed the Agreement to allow Respondents to permit class arbitration, Dkt. 1, and an accompanying memorandum of law, Pet'r Mem. On August 23, 2018, Respondents filed a memorandum of law in opposition to the motion to vacate. Resp't Mem. On September 6, 2018, Wells Fargo filed a reply. Dkt. 21 ("Pet'r Reply").

## II.     Applicable Legal Standards

The Federal Arbitration Act ("FAA") authorizes a district court to review an arbitral award and to "confirm and/or vacate the award, either in whole or in part." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). Specifically, the FAA permits any party to an arbitration to seek vacatur of an award where the arbitrator, *inter alia*, "exceeded [her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The moving party bears "the burden of proof, and the showing required to avoid confirmation is very high." *Wells Fargo Advisors, LLC v. Sappington*, 328 F. Supp. 3d 317, 322 (S.D.N.Y. 2018) ("*Sappington II*") (quoting *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011). The Court's review is "severely limited, so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71–72 (2d Cir. 2012) (internal citations omitted). Accordingly, the Court owes "strong deference" to "arbitral awards and the arbitral process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007).

The Second Circuit has held that "[a]n arbitrator exceeds [her] authority only by (1) 'considering issues beyond those the parties have submitted for [her] consideration,' or

(2) 'reaching issues clearly prohibited by law or by the terms of the parties' agreement.'"

*Anthony v. Affiliated Computer Servs., Inc.*, 621 F. App'x 49, 51 (2d Cir. 2015) (quoting *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 122 (2d Cir. 2011), *cert. denied*, 565 U.S. 1259 (2012) ("*Jock IV*")). The Second Circuit has "consistently accorded [Section 10(a)(4)] the narrowest of readings." *Anthony*, 621 F. App'x at 50–51. Whether the arbitrator correctly decided an issue is *not* the question before the reviewing court. *See id.* at 52.

An arbitral award may also be vacated if it exhibits a "manifest disregard" of the law. *Tully Constr. Co. v. Canam Steel Corp.*, 684 F. App'x 24, 26 (2d Cir. 2017) (citation omitted). "The manifest disregard standard, rather than substantially broadening the grounds for vacatur, largely operates as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 15 Civ. 7428 (PAE), 2016 WL 3913599, at *10 (S.D.N.Y. July 15, 2016) (citation and internal quotation marks omitted). The moving party bears the heavy burden of showing that (1) "the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators," (2) "the law was in fact improperly applied, leading to an erroneous outcome," and (3) "the arbitrator . . . kn[ew] of its existence, and its applicability to the problem before him." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003). The Second Circuit has emphasized that vacating an arbitral award for manifest disregard of the law "is a doctrine of last resort," reserved for "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent but where none of the provisions of the FAA apply." *Id.* at 389. Accordingly, manifest disregard of the law "means more than error or misunderstanding with respect to the law." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986).

Under either standard, the petitioner must do more than show "that the [arbitrator] committed an error—or even a serious error." *Id.* Instead, under the FAA, "[i]f there is 'even a barely colorable justification for the outcome reached,' the court must confirm the arbitration award." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997) (quoting *Matter of Andros Compania Maritima, S.A.*, 579 F.2d 691, 704 (2d Cir. 1978)).

This case calls for application of these principles in the context of a contract dispute. In this context, the Supreme Court has instructed, "[i]t is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen*, 559 U.S. at 671 (2010) (alterations, citations, and internal quotation marks omitted). The Court, therefore, must confirm arbitration awards despite "serious reservations about the soundness of the arbitrator's reading of th[e] contract." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 216 n.10 (2d Cir. 2002). "Whether the arbitrators misconstrued a contract is not open to judicial review." *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 203 n.4 (1956)) (citations omitted). In addition, "vacatur for manifest disregard of a commercial contract is appropriate only if the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract." *Westerbeke*, 304 F.3d at 222.

## III. Discussion

The arbitration provision construed here, Paragraph 14 of the Agreement, reads in relevant part:

> You are agreeing to arbitrate any dispute, claim, or controversy that may arise between you and Wells Fargo advisors, or a client, or any other person . . . and are

giving up the right to sue Wells Fargo Advisors, its subsidiaries or employees or any client or any other person in court concerning matters relating to or arising from your employment.

Agreement ¶ 14. The provision states that "[s]pecifically EXCLUDED from this obligation to arbitrate are any claims for State unemployment insurance (i.e., unemployment compensation, workers' compensation, work disability compensation or claims under the National Labor Relations Act")." *Id.* It further excludes claims under an employee benefit plan. *Id.*

The Arbitrator's Award construing Paragraph 14, which followed four rounds of briefing and the submission of approximately 200 judicial and arbitral authorities, Award at 4, contains 17 pages of analysis. In them, the Arbitrator explains at length the basis for her determination that Paragraph 14 permits Tucker, Dooley, and Glasgold to pursue class claims on behalf of other Wells Fargo financial advisors. *See id.* at 4–21.

The Arbitrator first reviewed the legal standards governing construction of an arbitration clause. The Arbitrator drew on decisions applying the FAA from the Supreme Court, including *Stolt-Nielson* and *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013), and lower federal courts, *see* Award at 4–7. Based on this authority, the Arbitrator reasoned that the decisive issue is whether the parties had agreed to authorize class arbitration, and that this question does not necessarily turn on whether the arbitral provision expressly used the word "class" or the term "class arbitration." *Id.* at 6–7.

The Arbitrator then interpreted the arbitration clause at issue. She inquired "whether there are contractual grounds for class arbitration," while observing that there is "no definitive Supreme Court guidance as to exactly what is needed to constitute an adequate contractual basis for class arbitration," and that each side had marshaled lower-court authorities in support of its construction. *Id.* at 7. The Arbitrator closely parsed the text of Paragraph 14, including

examining dictionary definitions of the words "dispute," "controversy," and "claim." *Id.* at 9–10. The Arbitrator considered Respondents' arguments, including that the Agreement's use of the word "any" in preface to these terms signified a "comprehensive and all-encompassing" obligation to arbitrate that included "both individual and class-based claims," *id.* at 10, and that the arbitral clause's express exclusion of certain claims, but not representational claims, was to the same effect, *id.* The Arbitrator also considered Wells Fargo's competing arguments. These included the following: that the absence of an express reference to class arbitration indicates the lack of mutual assent to such arbitration; that there is a distinction between a class action as a procedural mechanism to resolve "any dispute, claim or controversy" and the "dispute, claim, or controversy itself"; and that the words "you" and "your" in Paragraph 14 refer solely to the person who signed the Agreement at issue, therefore limiting the arbitration commitment "to individual bilateral disputes." *Id.* at 10–11.

The Arbitrator ultimately found Respondents' "interpretation of the Agreements to be in closer keeping with the properly understood principles of *Stolt-Nielson* and other governing authorities." *Id.* at 11. The Arbitrator recited three reasons for this determination.

First, the language of the agreement, considered in light of case law applying such provisions, was "sufficient to conclude that there was implicit consent to assertion of class claims in arbitration even though the word 'class' was not expressly used in the Agreements." *Id.*; *see also id.* at 11–15. Second, "other factors" identified as relevant in *Stolt-Nielson* and ensuing precedents to arbitral clause construction reinforced that there had been an agreement to arbitrate class claims. *Id.* at 15. These included the relative sophistication of the parties, Wells Fargo's authorship of the Agreement, and evidence that the pursuit of class claims in arbitration was "by no means novel" at the time Wells Fargo "required Claimants to sign the Agreement in

2011-2013." *Id.* at 15–17.  Third, the Agreement did not include any mention or warning of a waiver of class claims.  Instead, it overtly waived only "suing in court and having a jury trial." *Id.* at 18; *see also id.* at 19 ("Nothing in the Agreements would have reasonably caused someone being asked to sign them to <u>expect</u> the interpretation and result now urged by [Wells Fargo]— namely[,] a total waiver of the right to pursue a claim on behalf of oneself and others similarly situated.").  The Arbitrator concluded by considering, but not finding dispositive, various decisions cited by Wells Fargo.  *Id.* at 19–20.

In now pursuing vacatur of the Award, Wells Fargo makes two broad arguments.

First, Wells Fargo contends that the Arbitrator exceeded her authority by (1) allowing an agreement to permit class arbitration to be inferred, rather than textually explicit, and, ostensibly, requiring a party seeking to preclude class arbitration to include a provision explicitly waiving class arbitration; (2) in interpreting the Agreement, considering evidence beyond the four corners of the Agreement; and (3) issuing a clause construction award that, ostensibly, binds the absent members of the purported class.

Second, Wells Fargo argues that the Arbitrator manifestly disregarded the law in reaching her decision, specifically by ignoring holdings of the Supreme Court in *Stolt-Nielsen*.  The Court addresses each argument in turn.

## A.      The Arbitrator Did Not Exceed Her Powers

### 1.       The Arbitrator's Construction of the Agreements Under *Stolt-Nielsen*

Wells Fargo argues, first, that the Agreements did not provide a contractual basis for the Arbitrator to find that the Agreements implicitly allowed for class arbitration.  *See* Pet'r Mem. at 6.  The Arbitrator, therefore, exceeded her authority, according to Wells Fargo, by "requiring that the Agreements affirmatively exclude class procedures or else be presumed to include

them." *Id.* at 7. Wells Fargo argues that such a requirement conflicts with the Supreme Court's holding in *Stolt-Nielsen*.

Wells Fargo misreads *Stolt-Nielsen* and, therefore, mischaracterizes the Arbitrator as having exceeded her authority under that decision. Although Wells Fargo correctly observes that *Stolt-Nielsen* "require[s] that class arbitration procedures only be allowed where there is a contractual basis for doing so," *id.* at 4, it overreaches in reading "contractual basis" to mean only "expressly allowed." Wells Fargo portrays *Stolt-Nielsen* to bar finding an agreement to allow class arbitration except where an explicit statement to that effect appears in an arbitral agreement. However, as the Arbitrator rightly explained, *Stolt-Nielsen* does not say that. *Stolt-Nielson* does not preclude the possibility that an agreement to permit class arbitration could be found based on implicit evidence of agreement. *See* Award at 5. The Supreme Court instead held that "[a]n implicit agreement to authorize class action arbitration . . . is not a term that the arbitrator may infer *solely* from the fact of the parties' agreement to arbitrate." *Stolt-Nielsen*, 599 U.S. at 685 (emphasis added). But that holding, and the Court's analysis, does not preclude inferring such mutual assent from textual cues within the arbitral agreement.

As a result of its misreading of *Stolt-Nielson* to categorically preclude finding agreements to class arbitration in the absence of explicit language, Wells Fargo depicts the Arbitrator as having flouted a limit on her authority imposed by *Stolt-Nielson*. That is wrong. In fact, the Arbitrator addressed a question not squarely resolved by *Stolt-Nielson*: Whether assent to class arbitration, in the absence of an explicit textual command, can be inferred from implicit textual cues. The Arbitrator found the answer to be yes, while recognizing the divided lower-court case authority on this point, and she made implicit evidence of such intent in the Agreement's text the primary basis for her construction of Paragraph 14 to permit class arbitration. Award at 11.

None of this flouted any restriction imposed by *Stolt-Nielson* so as to exceed the Arbitrator's authority.

To be sure, Wells Fargo was at liberty before the Arbitrator to argue that the principles of *Stolt-Nielson* would be most persuasively vindicated were that decision extended to categorically bar courts and arbitrators from ever inferring agreements to class arbitration. But, in the absence of controlling case authority, the Arbitrator was within her authority to take a different view. Far from violating limits imposed by *Stolt-Nielsen*, the Arbitrator carefully analyzed that decision (and the ensuing body of law addressing the bases on which to find class arbitration), permissibly arrived at the opposite conclusion (that an agreement as to this point can be express or implied), and found on the facts here an implied agreement to permit class arbitration. Wells Fargo may now rue that the arbitral forum it chose has reached this outcome, and that this Court's review is limited to determining only whether the Arbitrator exceeded her broad authority, not whether she was right or wrong. But that was a risk that Wells Fargo accepted when it selected arbitration as the forum in which it would litigate employment disputes with the respondent financial advisors.

Relatedly, Wells Fargo misrepresents the manner in which the Arbitrator interpreted the parties' Agreement en route to finding an implicit agreement to permit class arbitration. Wells Fargo casts the Arbitrator as "impos[ing] upon the parties an obligation to affirmatively disclaim class action procedures," Pet'r Mem. at 8, and urges that imposing such an obligation in order to avoid class arbitration would exceed an arbitrator's authority.

The Arbitrator, however, did not so hold. She did not require an express waiver of class procedures for Wells Fargo to prevail in defeating an inference of assent to class arbitration. She merely found that where the Agreement did not speak expressly to the subject of class arbitration, including by means of a waiver provision, state and federal law authorized her to

analyze holistically the Agreement's text to gauge the parties' intentions as to class arbitration. She explained that "the FAA and state law principles of contractual interpretation[] . . . call for the words of the contract to be given their plain and ordinary meaning, and for the Agreements to be interpreted as a whole, in accordance with their own terms and the intent of the parties." Award at 8 (citing *Stolt-Nielsen*, 559 U.S. at 682; *Dean Witter Reynolds, Inc. v. Bird*, 470 U.S. 213, 221 (1985); *Union Elec. Co. v. AEGIS Energy Syndicate 1225*, 713 F.3d 366, 368 (8th Cir. 2013) (explaining Missouri law, which governed the Agreements here)). Wells Fargo does not cite any controlling law, including *Stolt-Nielson*, that precluded this interpretive approach. Quite the contrary, as reflected above, the Arbitrator anchored her approach in substantial case law, including *Stolt-Nielson* itself.

Because the Arbitrator did not require an express waiver to defeat a construction of the Agreement to permit class arbitration, Wells Fargo's claim that the Arbitrator exceeded her authority in so requiring necessarily fails.

### 2. The Arbitrator's Construction of the Agreements Under Missouri Law

Wells Fargo next argues that the Arbitrator exceeded her authority by "rel[ying] on evidence extrinsic to the Agreements themselves," in alleged violation of governing Missouri law and by, allegedly, misconstruing the Agreements. Pet'r Mem. at 9.

The Court emphasizes at the outset the narrow scope of its review. The question is not whether the Arbitrator's conclusion was correct. It is whether she exceeded her powers "by (1) considering issues beyond those the parties have submitted for h[er] consideration, or (2) reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Anthony*, 621 F. App'x at 51. Neither ground for vacatur exists here.

To the extent Wells Fargo faults the Arbitrator for considering extrinsic factors, as the Court's earlier summary reflects, the Award itself reflects that it was rooted in the text of the Agreement. The Arbitrator devoted her initial analysis to the text, carefully considering a range of potential inferences. *See* Award at 7–15. She found the text ultimately determinative. In fact, the header of the Award's first point, which contained the Arbitrator's textual analysis, reads: "The language of the Agreements allows pursuit of class claims in arbitration." Award, at 11. To be sure, the Arbitrator went on to note that "other factors" supported this conclusion, namely, "the inequality—in terms of both sophistication and bargaining power—between these employees and their employer" and the prevalence of class claims in arbitration at the time of the Agreement. *Id.* 15–18. Wells Fargo faults the arbitrator for addressing these matters. Pet'r Mem. at 9. But even assuming that these factors were not properly considered, the Arbitrator discussed them only *after* she had engaged in a thoroughgoing analysis of the Agreement's text, and announced her conclusion that the text—the four corners of the Agreement—was dispositive and revealed mutual agreement to class arbitration. The Award makes clear that the Arbitrator viewed these "other factors" as reinforcing—confirming—her text-based determination, rather than as the source of her substantive ruling.

Wells Fargo's reliance on this aspect of the Arbitrator's discussion is misplaced for other reasons. It is far from clear that it was impermissible for the Arbitrator to consider these other factors. The Arbitrator, in fact, cited *Stolt-Nielson* itself as authority to do so. *See* Award at 15 ("In *Stolt-Nielson*, the Supreme Court confirmed that factors concerning how the arbitration contract was formed are relevant to a clause construction determination. 559 U.S. at 684 (mentioning the sophistication of the parties, the presence [or absence] of a tradition of class

13

arbitration under the applicable body of substantive law, and the identity of the drafter as factors that would have been worthy of that arbitration panel's consideration).").

And it is by no means clear that Missouri law, on which Wells Fargo relies in claiming error by the Arbitrator, precluded consideration of these factors. Judge Caproni thoughtfully analyzed this question in *Sappington II, supra.* There, Wells Fargo, in a FLSA case brought by other financial advisors, challenged a different arbitrator's construction of the same arbitral provision to imply an agreement to permit class arbitration. The arbitrator there had cited a Missouri appellate decision, *Phipps v. School District of Kansas City*, 645 S.W.2d 91 (Mo. Ct. App. 1982) "as authority permitting him to consider extrinsic evidence *regardless* of whether the Agreements are ambiguous." *Sappington II*, 328 F. Supp. 3d at 326. *Phipps* had held that a contract's "component words and terms are interpreted according to the full circumstances of the manifestation of intent event [and this rule] does not depend upon an ambiguity or nonambiguity . . . ." *Phipps*, 645 S.W.2d at 101. And Judge Caproni, in her decision, marshaled numerous examples in which Missouri courts have followed *Phipps*. *Sappington II*, 328 F. Supp. 3d at 326 (collecting cases). There is, to be sure, contrary case authority, including a 2017 holding by the Missouri Supreme Court that "[i]f a contract is unambiguous, the parties' intent may be gathered from the terms of the contract alone, and no extrinsic evidence may be introduced to contradict the terms of the contract or to create an ambiguity." *State ex rel. Greitens v. Am. Tobacco Co.*, 509 S.W.3d 726, 741 (Mo. 2017). Although the *Phipps* line is in apparent tension with *Greitens*, as Judge Caproni observed, the conflict can be resolved in two ways: First, "extrinsic evidence could permissibly be used to *interpret* a term without *varying* or *contradicting* it, which is forbidden." *Sappington II*, 328 F. Supp. 3d at 326. Second, "the Supreme Court of Missouri in *Greitens* wrote that intent '*may* be gathered from the terms of the

contract alone,' not 'must,' which could provide leeway for courts to review extrinsic evidence beyond the terms of a contract." *Id.* Under either of these approaches, the Arbitrator's consideration of extrinsic evidence here would not have been error. Wells Fargo thus has not clearly established that the Arbitrator incorrectly applied Missouri law.

Finally, as Judge Caproni also recognized, "even if Wells Fargo were correct that the Arbitrator misapplied Missouri law relative to interpretation of an unambiguous contract, that does not provide a basis to vacate the [a]rbitrator's decision." *Id.* at 327. The Second Circuit has repeatedly explained that courts reviewing arbitral awards must confirm the decision "even if the ground for their decision is based on an error of fact or an error of law." *Willemijn Houdstermaatschappij*, 103 F.3d at 13. The Supreme Court has also held that a court may not review an arbitrator's decision for legal error even if the parties expressly provided for that standard of review in their contracts. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 585–86 (2008). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans*, 569 U.S. at 569 (quoting *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000); *see also Urban Assocs., Inc. v. Standex Elecs., Inc.*, No. 4:04-CV-40059, 2012 WL 1079723, *10 (E.D. Mich. Feb. 17, 2012) ("[T]his is one of the very reasons parties choose arbitration—so that arbitrators may bring their expertise to bear on an otherwise complicated matter outside the ken of a generalist judge or a lay jury.").

Wells Fargo separately protests various aspects of the Arbitrator's textual analysis. The Court summarizes four.

Wells Fargo first argues that the Arbitrator wrongly viewed the parties' agreement to "arbitrate any dispute, claim or controversy" as signifying that class claims were included, Award at 11. Wells Fargo contends that "a 'class-based claim' is not a type of substantive claim at all, but a shorthand description for a claim that is brought pursuant to class action procedures." Pet'r Mem. at 13. "In other words," Wells Fargo argues, "while the Agreements are plainly referring to any substantive type of 'dispute, claim, or controversy,' the arbitrator reads this language to cover any *form* of dispute, claim, or controversy." *Id.* Wells Fargo made that argument before the Arbitrator, who, in turn, explicitly considered—and rejected—it, stating that the "distinction has no bearing on the clause construction question before me." Award at 13, n.19. Wells Fargo argues that its textual inference is more persuasive. But that is not an available argument on judicial review of an arbitral ruling construing a contract. Regardless, even if the textual inference Wells Fargo urges were superior to that drawn by the Arbitrator, under settled law, an arbitrator's misapplication of tenets of contractual construction does not justify vacatur. *See, e.g., Willemijn Houdstermaatschappij*, 103 F.3d at 14 (finding that arbitrators' decision was justifiable even though it was "based on an erroneous interpretation of the law").

Similarly, Wells Fargo faults the Arbitrator for concluding that, while the Agreements use the singular pronouns "you" and "your," they reflect a commitment "to arbitrate 'any dispute, claim or controversy' even if the claim may effect more than one employee," Award at 13. Wells Fargo faults the Arbitrator for, relatedly, opining that "[a]n employee's claim against [Wells Fargo] does not cease to be a dispute or controversy related to [his or her] employment simply because the disagreement may also implicate[ ] similarly situated [persons]." Award at 13 (citing *Mork v. Loram Maintenance of Way, Inc.*, 844 F. Supp. 2d 950, 955–56 (D. Minn.

2012) (internal quotation marks omitted)). Wells Fargo notes that, "[a]t the time of Respondents' Agreements in 2011 through 2013, numerous courts held that arbitration agreements incorporating singular pronouns such as 'you' and 'I'—the same terms used in the Agreements—manifest the intent for bilateral arbitration." Pet'r Mem. at 10. Wells Fargo's memorandum does not collect these precedents. But, even assuming *arguendo* that the weight of case law supported Wells Fargo's construction, that the Arbitrator's contractual construction is arguably inferior to Wells Fargo's would not justify vacatur.

Third, the Arbitrator reasoned that by including the AAA as a permissible forum for conducting this arbitration, the parties manifested their intent to allow class arbitration. The Arbitrator cited the AAA's Employment Rule 39(d), which states that the "arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court . . . in accordance with applicable law." Award at 13. Wells Fargo contends that the Arbitrator errantly viewed class actions as "a type of remedy or relief," when in fact they are procedural mechanism. Pet'r Mem. at 13 (emphasis removed). But the Arbitrator's analysis could also fairly be read to convey that certain remedies and forms of relief protected by the AAA's Employment Rules require the availability of class procedures. The Arbitrator found that the language in the Agreements was similar to the contractual language at issue in the *Jock v. Sterling Jewelers, Inc.*, litigation, in which, in a series of decisions, the Second Circuit has upheld the finding that the "entitlement to bring class claims was an integral part of what the contract offered the they would otherwise be entitled to seek in court." Award at 14 (citing *Jock IV*, 646 F.3d at 124). In any event, the Arbitrator's analysis, grounded as it is in contractual text, case law, and AAA rules referenced in the arbitral Agreement, is also within the ambit of the Arbitrator's authority.

17

Fourth, Wells Fargo faults the Arbitrator for inferring, based on the Agreement's express exclusion of certain types of claims (e.g., disability and ERISA claims), from the arbitral duty implies that the parties did not intend to similarly exclude class arbitration. *See* Award at 15 ("[T]hat the important subject of representational claims was not expressly contained in the list of excluded matters points to the conclusion that they were meant to be included."). Wells Fargo contends that this logic would force a party seeking to avoid class arbitration to include an express waiver of such procedure, in violation of *Stolt-Nielsen*'s teaching that an agreement to arbitrate class claims cannot be inferred from the bare fact of an arbitral agreement itself. *See* Pet'r Mem. at 8. But Wells Fargo errantly portrays the Arbitrator's reasoning. The Arbitrator did not hold that a party seeking to avoid class arbitration was required to expressly exclude it. Instead, as one part of her construction of the Agreement, she reasoned that, when the parties have made the affirmative decision to exclude certain areas of litigation from the arbitration obligation, a contrary inference may arise to non-excluded areas.[4] Persuasive or not, this act of construction was well within the Arbitrator's authority and is no basis for vacatur.

The broader response to Wells Fargo's critiques of the Arbitrator's construction of the parties' agreement is this: Whether the Arbitrator's construction or Wells Fargo's would prevail on *de novo* review is beside the point. *See Benihana,* 2016 WL 3913599, at *16 ("That the [arbitral] panel exercised that latitude in a manner, or to reach an outcome, different than the Court would have *de novo*, is of no moment"). Provided that the arbitrator recited a contractual basis, persuasive or not, for the construction she reached, that decision may not be overturned.

---

[4] The Arbitrator further depicted this aspect of her textual analysis as confirming an outcome independently reached. *See* Award at 15 (failure to exclude class claims while excluding substantive areas of litigation "[a]dd[s] weight to the conclusion that [the] language of the Agreements does allow for class claims in arbitration.").

*Id.* As the Supreme Court has frequently admonished parties that contemplate foregoing conventional litigation for the expedient of arbitration:

> The potential for [] mistakes is the price of agreeing to arbitrate. As we have held before, we hold again: "It is the arbitrator's construction of the contract which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." The arbitrator's construction holds, however good, bad, or ugly.

*Oxford Health Plans*, 569 U.S. at 572–73 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960) (alteration and internal citation omitted). So too, here. Wells Fargo has failed to show that any errors in the Arbitrator's construction of the Agreement support vacatur.

### 3.    The Effect of the Arbitrator's Decision on Absent Class Members

Wells Fargo next attacks the Award by arguing that the Arbitrator exceeded her authority by "purporting to issue an award which extends to absentee class members." Pet'r Mem. at 6. In support, Wells Fargo cites Judge Rakoff's recent decision in *Jock v. Sterling Jewelers, Inc.*, 284 F. Supp. 3d 566 (S.D.N.Y. 2018) ("*Jock VII*"). As portrayed by Wells Fargo, *Jock VII* "held that an arbitrator exceeded her authority in purporting to bind absent members of a purported class by certifying a class which included absent members," and "that absent members who have not opted in to an arbitration action could not be bound by decisions issued in that arbitration." Pet'r Mem. at 6 (citing *Jock VII*, 284 F. Supp. 3d at 571). The Arbitrator in this case, Wells Fargo contends, "ignores this caselaw entirely." *Id.*

This argument also fails. As Respondents recognize, Resp't Mem. at 9, *Jock VII* arose in a far different, and later, procedural posture. The issue there involved the arbitral certification of an opt-out class, such that members of that class who had not affirmatively opted out stood to be bound by the arbitrator's decision. Judge Rakoff held that the arbitrator lacked authority to bind

persons other than the named parties and others who chose to opt in to the proceeding. *Jock VII*,
284 F. Supp. 3d at 571. But the Award here does not certify a class at all. On the contrary, the
Award is explicit that it does not prejudge whether class certification would be appropriate.
Award at 21 n.27. A class may or may not be certified in this action in the future, and if a class
is certified, the class may or not be drawn to include opt-out members so as to implicate the
concerns raised in *Jock VII*. At this earlier procedural point, at which the sole issue is whether
the parties' Agreement permits class treatment, *Jock VII* is of no moment. The Court
accordingly rejects this line of attack, too.

**B.      The Arbitrator Did Not Manifestly Disregard the Law**

The Court turns now to Wells Fargo's final argument—that the Arbitrator manifestly
disregarded the law.

As reviewed earlier, the Arbitrator identified and discussed the applicable law at the
outset of the Award. She explained that two Supreme Court cases (*Stolt-Nielsen* and *Oxford
Health Plans*) were centrally important as to the "legal standard for determining if an arbitration
contract allows for class or collective arbitration." Award at 4. Parsing those and other
decisions, the Arbitrator recognized that the Supreme Court had never held that a clause must
explicitly mention that the parties agree to class arbitration "for a decision-maker to conclude
that the parties consented to class arbitration." Award at 5 (quotation and internal citations
omitted). The Arbitrator further recognized that *Stolt-Nielsen* does not foreclose the possibility
that a contract may implicitly reveal the parties' agreement to class arbitration. Award at 6,
citing *Stolt-Nielsen*, 599 U.S. at 685. Accordingly, the Arbitrator reasoned, "omission of the
specific words 'class' or 'class action'" does not resolve the parties' intent whether to authorize

class arbitration, and this question must be considered in light of "the rest of the language used in the arbitration contract." Award at 6 (citing *Oxford Health Plans*, 569 U.S. at 573).

As this synopsis and the preceding account reflects, the Arbitrator did not manifestly disregard the law. Instead, she explicitly acknowledged and sought to apply it, and Wells Fargo's claim that she manifestly disregarded the law borders perilously on the frivolous. As in *Sappington II*, where Judge Caproni rejected a similar argument, Wells Fargo does not offer any "evidence that the Arbitrator committed more than error or misunderstanding with respect to the law, if any error was committed at all. *Sappington II*, 328 F. Supp. 3d at 328 (citations omitted).

Although camouflaged to a degree by its briefs, Wells Fargo's grievance is, at bottom, not that clear and explicitly applicable law was ignored, as required to show manifest disregard. *See Duferco Int'l Steel Trading*, 333 F.3d at 390. It is instead that the law as to what is needed to infer an agreement for class arbitration, in the absence of explicit contractual authorization, remains unsettled.

The Arbitrator acknowledged the uncertain state of the law in this area. *See* Award at 7 ("Unfortunately, . . . there is currently no definitive Supreme Court guidance as to exactly what is needed to constitute an adequate contractual basis *for* class arbitration." (emphasis added)).[5] And she noted that "the losing side may be able to point to what is—at least apparently or arguably—contrary authority." *Id.* at 7 n.8. Although the Arbitrator does not canvass the conflicting lower-court precedents each side had mustered on this issue, Judge Caproni's opinion in *Sappington II* quite helpfully does. *See* 328 F. Supp. 3d at 328–29 ("*Compare Rame, LLC v. Popovich*, 878 F. Supp. 2d 439, 448–52 (S.D.N.Y. 2012) (finding that arbitrator did not exceed

---

[5] The Arbitrator, as noted, also acknowledged what is clear from *Stolt-Nielsen*: that consent to class arbitration *will not be implied* where the parties' agreement is silent regarding class arbitration and where the parties stipulate that they did not make any agreement, one way or the other, on the subject. Award at 6 (citing 559 U.S. at 687).

her powers in determining that the availability of class arbitration was implied in a contract featuring a broadly-worded arbitration provision that lacked a class action waiver), *with Mallh v. Showtime Networks Inc.*, No. 17 Civ. 6549 (DLC), 2017 WL 5157247, at *3–5 (S.D.N.Y. Nov. 7, 2017) (compelling individual arbitration for plaintiff bringing a putative class action where the relevant agreement contained an arbitration clause and an explicit class action waiver ).").  The Arbitrator then endeavored to apply the appropriate precedents to the Agreement at hand, mindful that the lack of definite Supreme Court guidance inevitably meant that a decision in either direction would be subject to some uncertainty.  And her decision to treat *Stolt-Nielsen* as leaving open the possibility of an implied agreement accords with Second Circuit law.  *See Jock IV*, 646 F3d at 123 ("*Stolt-Nielsen* does not foreclose the possibility that parties may reach an implicit— rather than express—agreement to authorize class-action arbitration." (citation and internal quotation marks omitted)).

Thus, far from manifestly disregarding clearly applicable law, the Arbitrator identified the relevant law, parsed it thoughtfully, and endeavored to apply it with considerable care.  The Court, therefore, rejects Wells Fargo's claim of manifest disregard as baseless.[6]

## CONCLUSION

For the foregoing reasons, in construing the Agreement to permit class arbitration, the Arbitrator neither exceeded her powers nor manifestly disregarded the law.  Accordingly, the

---

[6] To the extent that Wells Fargo separately suggests that the Arbitrator manifestly disregarded the law in considering extrinsic evidence, that argument, too, cannot secure it relief.  Challenges to an award based on the arbitrator's alleged inappropriate consideration of extrinsic evidence, even where such is found, do not warrant vacatur for manifest disregard of the law.  *See Perry v. Kingsland Capital Mgmt. LLC*, No. 16 Civ. 4305 (DAB), 2018 WL 1737237, at *3 (S.D.N.Y. Mar. 20, 2018) ("[The arbitrator's] interpretation of extrinsic evidence, though not necessary to his holding, does not constitute manifest disregard of the law."); *Giller v. Oracle USA, Inc.*, No. 11 Civ. 02456 (JGK), 2012 WL 467323, at *6 (S.D.N.Y. Feb. 14, 2012) (explaining that disregard of parol evidence rule does not constitute manifest disregard of the law), *aff'd*, 512 F. App'x 71 (2d Cir. 2013).

Court denies Wells Fargo's motion to vacate the arbitral Award. The Court respectfully directs

the Clerk of Court to terminate the motions pending at Dkts. 1 and 2 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: January 2, 2019
New York, New York